ON MOTION FOR REHEARING

STONE, J.
We deny Lusskin’s motion for rehearing, but withdraw our opinion of October 29, 2003, and substitute the following:
Lusskin, an orthopaedic surgeon, appeals an order by the Department of Health, Board of Medicine revoking his medical license. Lusskin contends that the order of revocation is contrary to the board’s guidelines and not supported by the evidence. We affirm.
In 1992, the board prohibited Lusskin from, among other things, treating female patients without the supervision of a female employee. A subsequent psychological evaluation revealed Lusskin suffered from a personality disorder that often led to inappropriate sexual behavior and an inability to take responsibility for his conduct or appreciate the wrongfulness of his actions. As a result, Lusskin was also required to enter into a monitoring agreement with the Physicians Recovery Network (“PRN”).
In 1996, the board filed an administrative complaint against Lusskin, finding a violation of section 458.331(l)(s), Florida Statutes, and citing Lusskin’s inability to practice medicine with reasonable skill and safety by reason of mental illness. The board suspended Lusskin’s license based on his non-compliance with the 1992 PRN contract. This court reversed that decision of the board because Lusskin had not been properly informed that his failure to comply with the PRN contract would act as proof of his inability to practice medicine with skill and safety. Lusskin v. State Agency for Health Care Admin., Bd. of Med., 731 So.2d 67 (Fla. 4th DCA 1999).
In June 1997, PRN declared a default in the Lusskin agreement, alleging that it had attempted to contact Lusskin, without success, as Lusskin failed to comply with many of the monitoring requirements. PRN specifically cited Lusskin’s psychological disorder as an impediment to communication between him and PRN. A subsequent complaint was brought on July 1, 1999, charging Lusskin with an inability to practice medicine with reasonable skill and safety by reason of mental illness, based, again, on his failure to honor his contract with PRN.
The administrative law judge found against Lusskin, but recommended reinstating his license on the condition that Lusskin enter into a third contract with PRN, agree to be placed on probation, and pay a fine. On review, the board accepted *735 all the hearing officer’s findings of fact and conclusions of law, but rejected the penalties and ordered the revocation of Luss-kin’s license.
In July 2002, this court reversed the board’s decision to revoke Lusskin’s medical license because its order failed to state the reasons for rejecting the hearing officer’s penalty recommendation in accordance with section 120.57, Florida Statutes. Lusskin v. Dep’t. of Health, Bd. of Med., 820 So.2d 424 (Fla. 4th DCA 2002).
On remand, the board clarified its ruling, stating that Lusskin demonstrated either an inability or refusal to comply with the PRN contract in two “significant” instances. First, Lusskin failed to advise his staff of their responsibilities in responding to PRN communications. Second, Lusskin failed to keep PRN updated on how his staff would respond to its communications. Specifically, when PRN tried to contact the office nurse designated to communicate with them, she refused to speak with PRN, waiting three days to call them back. Moreover, the nurse did not appear to know who the PRN representative was and, at the time of the hearing, still did not understand PRN’s role in monitoring Lusskin. Although Lusskin claimed that he set up an alternative procedure to return calls received from PRN, no such procedure was ever communicated to or approved by PRN. Further, when the PRN representative asked Lusskin to put the designated nurse on the phone, his response was “why.” The hearing officer found that Lusskin clearly failed to inform his staff of their duties under the PRN contract.
The hearing officer also found that Lusskin failed to comply with the contractual requirement to file monthly reports and affidavits with PRN and failed to accept responsibility for this violation. Although Lusskin contended that he sent letters to PRN stating he examined female patients only in compliance with the PRN contract, the PRN file contained only one affidavit and none of the alleged letters. Lusskin claimed that his failure to comply with the PRN contract was “someone else’s responsibility” and not his own. Further, he considered essential probational conditions “mere paperwork problems for someone else to deal with.” The hearing officer concluded that Lusskin’s failure to file the requisite letters and affidavits, and to otherwise communicate with PRN, demonstrated non-compliance.
A doctor appointed by the board concluded that Lusskin’s inability to take responsibility for his obligations under the PRN monitoring contract was “consistent with his diagnosed psychological illness.” Another doctor diagnosed Lusskin’s responses as “characterological problems” and spoke of his “personality characteristics of denial and projection of responsibility.” A third doctor diagnosed Lusskin with a “characterological” disorder identified by “narcissistic traits of self-centeredness, and relative callousness of his actions.” A fourth doctor also diagnosed personality disorders and opined that “if [Lusskin] prevented anybody from reporting to PRN, then that obstructiveness would be an indication that [Lusskin] was not practicing medicine with skill and safety”
A fifth doctor testified:
I express my concern that his reluctance to participate openly in an evaluation seemed to highlight the concern of the PRN that the patient is a practitioner who manipulates others to achieve his goals, regardless of why he was sent here_ Given [Lusskin’s] long standing history of sexual relations with his patient[s], his lack of guilt about these relationships, his inability to see this behavior as a personal ethical issue, and *736 the overt manipulativeness that surrounded this evaluation, I cannot state with confidence that the patient will not attempt to make his employees allow him to see female patients without a female health care professional in the room at all times.
A sixth doctor concurred with the opinion that Lusskin had a propensity to manipulate people in situations, and a seventh doctor concluded that if Lusskin prevented monitoring by PRN, then he “was not practicing medicine with reasonable skill and safety.”
The board’s discretionary decision to impose a higher penalty than that recommended by the hearing officer was not inconsistent with the requirements of section 458.311, Florida Statutes. Rather, the board has discretion to depart from the guidelines and impose a greater penalty.
Section 458.331(l)(s), Florida Statutes, provides that a doctor who is unable to “practice medicine with reasonable skill and safety ... as a result of any medical or physical condition” may be denied a license. Although guidelines in rule 64B8-8.001, Florida Administrative Code, provide first offense penalties ranging from probation to indefinite suspension, section 455.2273, Florida Statutes, gives the board discretion to depart from the guidelines and impose a harsher penalty where there are aggravating circumstances. Section 120.68, Florida Statutes, states that an agency abuses its discretion when it makes a decision inconsistent with an agency rule if the deviation is not explained.
In the present case, Lusskin has a history of disciplinary problems. Prior to the filing of this administrative complaint, the board filed a final order against Lusskin which required him to undergo a psychological evaluation. Further, Lusskin was ordered to enter into and comply with the PRN contract. The board, in its final order, specifically discussed this disciplinary history. The board also cited Luss-kin’s failure to accept responsibility for filing his monthly reports with PRN and notifying his staff of their duties under the PRN contract, both significantly hindering PRN’s ability to monitor Lusskin’s conduct.
We have considered and distinguish this case from Marrero v. Department of Professional Regulation, Board of Psychological Examiners, 622 So.2d 1109 (Fla. 1st DCA 1993), relied on by Lusskin. In Marrero, a psychologist appealed a final order permanently denying an application for a license. Id. Unlike here, the Marrero court, in vacating the board’s decision, considered the board’s permanent denial of the licensee’s application merely on the ground that the applicant’s license was suspended in another state without specific findings of aggravating circumstances in support of its determination. 622 So.2d 1109-10. We have also considered Arias v. State, Department of Business and Professional Regulation, 710 So.2d 655 (Fla. 3d DCA 1998), and deem it inapposite.
We conclude that substantial evidence supports the board’s finding that Lusskin’s mental condition and non-compliance with the conditions of the PRN contract demonstrate that he is unfit to safely and skillfully practice medicine.
Therefore, the board’s order is affirmed.
KLEIN and HAZOURI, JJ., concur.